PIEL MANUFACTURING COMPANY,
Incorporated, and Alfred J. Piel,
Appellants,

v.

GEORGE A. ROLFES CO., and Rolfes
Manufacturing Co., Appellees.

No. 18037.

United States Court of Appeals
Eighth Circuit.

June 23, 1966.

Donald H. Zarley, of Dick, Zarley, Mc-Kee & Thomte, Des Moines, Iowa, for appellants. M. Talbert Dick, Bruce W. McKee and Dennis L. Thomte, of Dick, Zarley, McKee & Thomte, Des Moines, Iowa, were with him on the brief.

Theodore R. Scott, of McDougall, Hersh & Scott, Chicago, Ill., for appellees. James P. Ryther, of McDougall, Hersh & Scott, Chicago, Ill., and A. Arthur Davis, of Brody, Parker, Roberts, Thoma & Harris, Des Moines, Iowa, were with him on the brief.

Before MATTHES and GIBSON, Circuit Judges, and LARSON, District Judge.

LARSON, District Judge.

The plaintiffs seek review of an Order holding invalid certain claims of two patents issued to plaintiff Alfred J. Piel who subsequently granted licenses for their use to plaintiff Piel Manufacturing Company, Incorporated. The patents in suit are U.S. No. 2,794,422 (the "422 patent") issued on June 4, 1957, and U.S. No. 2,-813,510 (the "510 patent") issued on November 19, 1957.

The District Court held that neither patent represented a sufficient advance over the prior art to be valid, and entered judgment for the defend-

ants.[1] We agree with that conclusion and affirm the judgment of the District Court.

The question raised with respect to each invention is whether it meets the standard of "nonobvious subject matter" set forth by 35 U.S.C. § 103, which provides in part:

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains * * *."

The problem of determining whether a particular device represents a sufficient advance over prior art to be patentable has been the subject of virtually innumerable judicial decisions, including a recent review of the issue by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).[2]

After reviewing the judicial standards evolved during the previous century, the Court held that § 103 of the Patent Act of 1952 was merely a statutory codification of the same standards, although it expressed its test in terms of "obviousness" rather than "invention." The Court stated that:

"While the ultimate question of patent validity is one of law, * * * the § 103 condition * * * lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. * * *

"This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. * * *" 383 U.S. 17–18, 86 S.Ct. 694.

With this interpretation of § 103 in mind, we are prepared to examine the patents in issue.

1. *The 510 Patent.*

The 510 patent involves an "Animal Actuated Liquid Applicator for Hide." The device described uses two portions of a cable as "scratching posts" for animals. Oil or insecticide flowing along the cable is applied to the hides of cattle

---

1. More specifically, the Court held invalid Claims 1–5 and 12 of the 510 patent and all nine claims of the 422 patent. The judgment also dismissed claims of trademark infringement and unfair competition. Only the patent issues are involved in this appeal.

2. For similar cases decided by this Court, see: Selmix Dispensers, Inc. v. Multiplex Faucet Co., 277 F.2d 884 (1960) and Caldwell v. Kirk Mfg. Co., 269 F.2d 506, cert. denied, 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185 (1959).

These decisions can be considered descendants of Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 13 L.Ed. 683 (1850), in which the Supreme Court, in invalidating a patent, commented:

"[U]nless more ingenuity and skill * * * were required * * * than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of a skilled mechanic, not that of an inventor." 52 U.S. at 267.

or other animals when the animals rub against the cables.

The "animal oiler" described by the 510 patent is strikingly similar in its basic features to one held unpatentable for lack of "invention" by Judge Sanborn writing for this Court in Caldwell v. Kirk Mfg. Co., 269 F.2d 506 (8th Cir.) cert. denied 361 U.S. 915, 80 S.Ct. 260, 4 L.Ed.2d 185 (1959). Judge Sanborn's description of the Kirk device involved in that case is useful as a general description of the device covered by the 510 patent and as a summary of the prior art.

The Kirk device was comprised of:

"A large horizontal base made up of interconnected tubular members; a centrally-located, hollow, upright, metal cylindrical tank, supported by and fastened to the base. The tank serves as a reservoir for insecticide or oil, and as a support for the rubbing and oiling elements. Extending outwardly and downwardly from short troughs or flow ways at the upper end of the cylindrical reservoir are two oppositely disposed flexible cables or catenaries, upon which are strung metal washers The lower ends of the cables are secured to the extremities of the base. The upper ends are connected with the flow ways, which are a part of the means provided by Kirk for causing the oil, after being lifted from the reservoir, to flow downward onto the cables and the washers which constitute the rubbing and oil-applying elements of the device. The means provided for elevating oil from the reservoir to the flow ways are a pair of chain-type pumps, each of which is set in motion whenever an animal rubs against the cable, the distortion of which activates that pump.

"Reduced to its simplest terms, Kirk's contribution to the art of oiling an animal consists of (1) a horizontal base, (2) an upright tank, (3) two loosely-hung cables or catenaries extending from the top of the tank downwardly to the ends of the base, and (4) the means for raising liquid from the reservoir to flow down the cables when needed."

Piel's 510 patent differs from the Kirk oiler in only two ways.

(1) Where Kirk's device used two cables running from the top of the upright tank to opposite sides of the base, Piel's oiler uses a single cable which runs from one side of the base up to and across the top of the upright tank and down to the opposite side of the base.

(2) The pump and the mechanism operating it are different from the ones used by Kirk. Instead of a pair of chain pumps, the 510 patent uses a single bellows pump with an actuating arrangement of levers and springs.

The single question before us with respect to the 510 patent is whether these two differences constitute a sufficient advance over the prior art to render the 510 patent valid. The District Court held that both features were directly anticipated by prior art or were at least obvious when viewed in the light of earlier inventions.

In arguing that the 510 patent is valid, the plaintiffs place primary reliance on the fact that the device uses a single cable. This change is claimed to represent a significant advance over the prior art, in that the use of a single cable reduces the lateral stress on the walls of the upright tank when an animal rubs against the free sections of cable since much of the force is transmitted laterally by the cable to the opposite side of the tank and base. The precise extent to which the reduction in lateral stress is really a significant improvement over earlier devices for oiling animals is questionable, but we do not believe it necessary to investigate that issue in detail.

After investigation of the patent application which eventually matured into the 510 patent, the Patent Examiner rejected all claims as showing no more than minor mechanical improvements over a patent issued to R. E. Caldwell.[3] The Caldwell

---

3. U.S. No. 2,706,465, issued April 19, 1955.

patent, like the Kirk patent just described, used two separate cables, but the Examiner commented that "no invention would be involved in joining these two cables together if desired." Piel then filed two subsequent amendments emphasizing various advantages of the use of a single cable and the difference between his structure and the Caldwell device. It is only in the second amendment that the reduction of lateral stress, now heavily relied upon, is first mentioned. After the amendments, the 510 patent was eventually granted.

An examination of our decision in Caldwell v. Kirk Mfg. Co., supra, suggests that it would be difficult for this Court to conclude that the use of a single cable was a sufficiently "nonobvious" improvement to justify the granting of a patent. The Kirk patent was the first to embody an entire animal oiler. This Court conceded that there were no prior art patents which could be said to be an anticipation of Kirk, but held that the device was no more than could be expected from a skilled mechanic familiar with prior art. In the light of that case, it is difficult to see how this Court could decide that the linking of two separate pieces of cable constituted patentable invention, at least without some strong showing that this modification solved a long-standing problem in the art. There

is no evidence in the record to show that this was the case. Although the plaintiffs claim that the change was significant to the industry, our review of the record indicates to us that the effect of this development on the industry was not great enough to be of importance on the issue of "obviousness."

In any event, there was an additional patent cited as prior art in the Court below, though not cited by the Patent Examiner, which utilized a single cable in a device for the oiling of animals. That patent was issued to D. C. Assman on September 11, 1956, on an application filed May 27, 1955.[4] The Assman patent, if filed prior to Piel's conception of his invention, is clearly prior art.[5] We are of the opinion that the teaching of the Assman patent with respect to a single cable could easily be applied to the earlier device of Caldwell and Kirk by any competent mechanic, so we think the determinative issue with respect to the validity of the 510 patent is whether the filing of the Assman patent occurred prior to the time Piel first conceived and developed his means for reducing lateral stress. The trial court held, on somewhat conflicting evidence, that the Assman filing preceded Piel's invention. That finding, based as it was on substantial evidence, is conclusive here.[6]

4. U.S. No. 2,767,335 issued September 11, 1956. Since the Assman patent was not a portion of the prior art considered by the Patent Examiner in processing Piel's application, the statutory presumption of validity accorded a patent by 35 U.S.C. § 282 (1964) is substantially weakened. John Deere Co. of Kansas City v. Graham, 333 F.2d 529, 530–531 (8th Cir. 1964) aff'd 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

5. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965). Cf. 35 U.S.C. § 102(e) (1964).

6. The application for the Assman patent was filed on May 27, 1955, over eight months before Piel filed his application. Piel attempted to avoid the effect of this prior filing by showing that he had designed and built an animal oiler using a single cable as early as April, 1955. However, both the sketch of the device

introduced at trial and Piel's testimony indicated that the cable was clamped at both sides of the upright tank so that none of the advantages currently claimed with respect to lateral stress was realized. Other testimony by Piel indicated that he considered his 510 invention to date from early in 1956. We consider these facts ample evidence to support the finding of the District Court that Assman's filing preceded Piel's invention of the single cable device as represented in the 510 patent, so that finding is conclusive here. Fed.R.Civ.P. 52(a); Stearns v. Hertz Corp., 326 F.2d 405, 408 (8th Cir.) cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

The plaintiffs also object to rulings by the lower court with respect to the admissibility of a model of the device designed by Piel in April, 1955. A review of the record convinces us that the Court was well within its discretion in making

The 510 patent's use of a single pump and a slightly different means of operating it requires little additional discussion. The Caldwell device used two cables and two pumps so that an animal rubbing against either cable would cause oil to flow down only one cable. Piel used a single pump which was actuated by an animal rubbing against either washer-strewn portion of the cable. The liquid then flowed down both cables.

The use of a single pump is certainly no more than a minor modification that might be expected of any good mechanic who undertakes to redesign an established device to operate in a slightly different way. Precisely the same comment is applicable to the combination of a coil and levers used to activate the pump when an animal rubs against the cable. Prior art, particularly the Caldwell patent, showed the essential elements of this. We also note that, as far as the record indicates, the mechanism activating the pump and the use of a single pump were not heavily relied upon in the patent office after the initial rejection of the claims.

We therefore conclude that the District Court was correct in determining that the device described in the 510 patent was obvious in view of the prior art.

2. *The 422 Patent.*

The 422 patent is styled a "Liquid Applicator for Animal Usage" and describes an invention which is designed to be used on the washer-strewn cables of a cattle oiler such as that described in the Caldwell, Kirk and 510 patents. The device, shaped like a cone or cup, is placed on the washer-strewn cable with the flared end facing toward the top of the cable. Oil or insecticide which has collected on the outside of the washers as it flows down the cable is gathered in and led back to the surface of the cable itself. This is intended to reduce the loss of oil, since oil might otherwise collect on the outer surface of the washers and drip to the ground.

The invention described in the 422 patent is continually referred to in the claims as a liquid redirecting unit. The trial court found that the washers in the Kirk and Caldwell patents also redirected some of the oil and that the 422 device, although performing the job in an improved manner, used the same principles as the earlier devices, and would have been obvious to any competent mechanic in the art. This Court has traditionally given considerable weight to a District Court's determination that a particular modification of prior art is one which might have been developed by a mechanic in the art, even though the ultimate issue of "obviousness" must be considered a matter of law.[7] There is nothing in facts presented here to lead us to a different result.

In considering the improvements embodied in the patents under discussion, we are of the opinion that they represented only minor mechanical modifications of the type which are continually being made to improve established devices. Neither approached, in terms of mechanical innovation, even complexity as modest as that presented by the Kirk patent held invalid by this Court in Caldwell v. Kirk Mfg. Co., supra. Nor did either solve a problem of great importance to the industry or any long-standing difficulty.

As the recent cases in this Circuit and in the Supreme Court have not lowered the standards of patentability, we are obliged to hold that both the 510 and 422 patents are invalid as being obvious to a person of ordinary skill in view of the teachings of prior art. The judgment of the District Court is affirmed.

its rulings. In any event, the plaintiffs were told that a continuance would be granted, if necessary, to allow them to produce a witness claimed to be essential. They did not see fit to pursue the point.

7. Rota-Carb Corp. v. Frye Mfg. Co., 313 F.2d 443, 444 (8th Cir. 1963); Ditto, Inc. v. Minnesota Min. & Mfg. Co., 336 F.2d 67, 69 (8th Cir. 1964). Cf. American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977 (8th Cir. 1966).