**SCOVILL MANUFACTURING COMPANY, Plaintiff,**

v.

**ROTO BROIL CORP. OF AMERICA, Defendant.**

No. 65–C–637.

United States District Court
E. D. New York.

Feb. 26, 1969.

Sandoe, Hopgood & Calimafde, New York City, for plaintiff; by Nichol M. Sandoe, New York City, of counsel.

Lackenbach & Siegel, New York City, for defendant; by Armand E. Lackenbach, New York City, of counsel.

RAYFIEL, District Judge.

This action was brought by Scovill Manufacturing Company, assignee of the design patent in suit, against Roto-Broil Corporation of America (Roto-Broil) for (count 1) the alleged infringement of United States Design Patent 200,905, issued April 20, 1965, for a power-operated knife, application for which had been made on June 29, 1964, and (count 2) for unfair competition arising from the alleged unauthorized use by the defendant of the phrase "the knife with the hole in the handle", adopted by the plaintiff in its advertising to identify and promote the sale of the product in suit, commonly referred to as an electric knife. Jurisdiction is based on Section 1338(a) of Title 28, U.S.C. and the Patent Laws of the United States. The relief sought is for an injunction, an accounting of loss of profits, an assessment of treble damages, and costs and reasonable attorneys' fees. Both plaintiff and defendant are engaged in the manufacture and sale of electrical household appliances, including electric-powered knives.

The defendant contends that the aforesaid patent is invalid, denies that its design is unique or distinctive, or that the Patentees were the original inventors thereof. It claims further that substantial parts thereof have been described and published in many patents granted prior to its issuance to the Patentees, and has incorporated a list thereof in its answer. It contends further (1) that the purported invention referred to in said Letters Patent had been in public use for more than one year prior to the date of the filing of the application therefor; (2) that the said Letters Patent were issued without due, proper and adequate investigation, and that the relevant prior art embodied in the patents cited in the defendant's answer were overlooked by the Commissioner of Patents; and (3) that it has not infringed said patent or been in unfair competition with plaintiff in connection with the sale of its electric knife.

The defendant also asserts a counterclaim for a declaratory judgment decreeing that the plaintiff's patent is invalid and void; for an injunction restraining the plaintiff from claiming that defendant has infringed thereon; and for an accounting of damages arising from plaintiff's aforementioned wrongful acts resulting in a loss of defendant's customers and business.

The issues to be decided are: (1) whether the patent in suit is valid; (2) whether it has been infringed by the defendant; (3) whether the design of the defendant's accused power-operated knife has caused or is likely to cause prospective purchasers of plaintiff's product to be confused as to the source or origin thereof, thereby permitting the defendant to compete unfairly with the plaintiff; and (4) whether the defendant has caused its customers to use the phrase "knife with the hole in the handle" for the purpose of palming off its electric knife as the plaintiff's.

Prior to the trial the parties entered into the following stipulation:

"IT IS HEREBY STIPULATED AND AGREED by and between the parties to the above entitled action that the following facts are uncontested:

1. That United States Letters Patent for a design entitled Power Operated Knife, No. Des. 200,905 were issued to plaintiff Scovill Manufacturing Company on April 20, 1965.

2. That the entire right, title and interest in and to the design invention covered by the said Letters Patent No. Des. 200,905 was assigned to plaintiff Scovill Manufacturing Company by the co-inventors thereof Dave Chapman and Robert C. Le Sueur by an instrument in writing dated June 22, 1964, duly recorded in the United States Patent Office on August 27, 1964 in Reel 1433, Frame 496.

3. That plaintiff has been at all times since April 20, 1965, and is now the owner of the said Letters Patent.

4. That defendant has been, since April 1965, and is now making, using and selling power-operated knives exemplified by the specimen marked for identification plaintiff's Exhibit 1 which is asserted by plaintiff to infringe the design patent in suit.

5. That the said knife, Exhibit 1, is designated by defendant as its Model W-2, and that the design embodied in the said Model W-2 is also embodied in power-operated knives made and sold by defendant which are designated as its Model W-10 and its Model W-25, which are also asserted by plaintiff to infringe the design patent in suit.

6. That Jay-Kay Metal Specialties Corp., a New York corporation, and Peerless Broil-Quick Corp., a New York corporation, are wholly-owned subsidiaries of Roto-Broil Corporation of America, the defendant in this action, and that for purposes of this action, any and all acts of the said Jay-Kay Metal Specialties Corp. and Peerless Broil-Quick Corp. and their respective officers and employees having to do with the manufacture, use or sale of the power-operated knives alleged by plaintiff to infringe the design patent in suit No. D-200,905 shall be deemed to be acts of the defendant Roto-Broil Corporation of America.

7. That since issuance of the patent in suit, electric carving knives have been advertised by

Riviera Appliance Corporation
Shetland of Salem
Toastmaster Division of McGraw-Edison Co.
Sunbeam Corporation

having handles as illustrated by defendant's Exhibits Q, R, S and U respectively.

8. Plaintiff has, since the institution of this suit, used in some of its advertising the expression 'The original knife with the hole in the handle'.

9. Plaintiff has advertised that its electric knife with the hole in the handle 'puts the weight of the knife under the hand to make carving easier to guide and to control'.

10. Defendant has never used the expression 'Knife with the hole in the handle' in its own advertising but has used the expressions 'easy-to-grip handle' and 'open, sword-grip handle'.

11. Plaintiff, in its line of electric appliances, has sold, prior to the application for the patent in suit and more than one year prior thereto, portable mixers, stationary mixers and steam irons with handles as illustrated in defendant's Exhibit M."

The applicable statutes, contained in Title 35 U.S.Code, so far as they are here pertinent, follow:

*Sec. 102 Conditions for patentability; novelty and loss of right to patent.*

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country, *or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.* (Emphasis supplied)

*Sec. 103 Conditions for patentability; non-obvious subject matter.*

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, *if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.* Patentability shall not be negatived by the manner in which the invention was made. (Emphasis supplied)

*Sec. 171  Patents for designs.*

Whoever invents any *new, original and ornamental design* for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.  (Emphasis supplied)
*Sec. 282  Presumption of validity; defenses.*

A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.

On the basis of the testimony and exhibits received in evidence, the Court finds as follows:

In 1962 General Electric Company entered into the production of an electric-powered carving knife the industrial design patent on which was subsequently issued to it.  It was marketed with considerable success.  It was powered by an electric motor contained or housed in its handle, which also had a control thereon for releasing the power so that the protruding blades could function as a knife. (Plaintiff's Exhibit 38) (Defendant's Exhibit A)

In the summer of 1963, the plaintiff contracted with Sears, Roebuck & Co., to manufacture for it a similar electric-powered knife, to be sold solely by Sears, and, probably due to the latter's great success in marketing the same, the plaintiff decided to manufacture and sell a similar product as its own.  Thereupon, in June, 1963, one Dave Chapman, who had previously designed some of plaintiff's products, was engaged to prepare an appropriate design therefor.  After many meetings with a Mr. Wolf, of plaintiff's engineering department, Chapman and a Mr. Le Sueur, one of his employees, produced an acceptable design "in the rough" on August 25, 1963.  (Plaintiff's Exhibit 29)

Several models were thereafter made, conforming generally to said design, until January, 1964, when one was finally approved for production.  Detailed drawings, specifications for tooling, dies and jibs were prepared for large scale production of the knife by plaintiff's engineering and manufacturing departments in cooperation with Chapman and his staff.

In July, 1964, plaintiff publicly introduced its finished product (Model 270, Plaintiff's Exhibit 7) for exhibition and sale at the Housewares Show in Chicago, Illinois, making its first sale thereof at said show on July 10, 1964 to distributors, and going into large volume production thereof early in the fall of 1964.

In April, 1964, in preparation for the public showing and prospective marketing of its product at the aforesaid trade show, the plaintiff engaged an advertising agency to publicize its new product on television and in other media.  The agency suggested the slogan "the knife with the hole in the handle", which was adopted by the plaintiff and used for the first time at said trade show.  Other advertising items, such as brochures, pictures, posters and copy for newspapers and trade journals, were thereafter prepared for publication and for the distributors of its product.

Plaintiff claims to have spent several million dollars to advertise its knife on television, and considerable additional sums to publicize it in newspapers, trade journals and in its catalogues.

When plaintiff's Model 270 appeared on the market the defendant acquired a specimen thereof.  Its president conferred concerning the same with its chief engineer and the head of its design department.  Thereafter, in the fall of 1964, drawings and models were made by the defendant for the construction of its Model W-2, electric-powered knife. Volume production began in January, 1965, and the first shipments began in April, 1965.

The plaintiff introduced in evidence, without objection, 63 exhibits. Included among them are the aforementioned Exhibit 7, the specimen of its patented article in suit, and Exhibit 1, a specimen of the accused knife, manufactured and sold by the defendant. The remainder of the plaintiff's exhibits are catalogues, newspapers and trade journal ads containing the accused knife of the defendant under the name "Le Chef", to show its similarity with the plaintiff's patented product, and the use in some of such ads by defendant's customers of the phrase "hole in the handle"; other exhibits are drawings and specifications made by the inventors, including the final drawing accepted by the plaintiff, and specifications for its manufacture; also advertisements, catalogues, television scripts and magazine copy used to acquaint the public with its patented knife, including the phrase "hole in the handle", intended to identify it in such media. The plaintiff also offered in evidence the depositions of the defendant's president and chief engineer. All of the exhibits have been considered by the Court.

In support of its several defenses, the defendant offered evidence that since 1962 it had manufactured an electric carving knife with a straight handle, similar to the General Electric type; that its president discussed with its chief engineer, one Hart, and his assistants, the development and manufacture of an improved type of electric knife, and "tooled up" for and went into its production, prior to the public offering of plaintiff's knife; that defendant did not copy the plaintiff's product but coincidentally made a similar, though, perhaps, somewhat less esthetic design. Defendant's president, in comparing the plaintiff's mixers, Items 4 and 6 on Exhibit M, with Exhibit 7, the specimen of plaintiff's knife, pointed out the similarity of design of the handles, and that based on his experience of upwards of twenty years in the manufacture of electric appliances such use of the design of the mixers in the plaintiff's electric knife was within the competence of a person having ordinary skill in the art, as to which Chapman certainly would qualify; that it was obvious that the designs of both the plaintiff's mixers and patented knife were the product of the same hand, Chapman's; that defendant's accused knife was somewhat different in design, and was always clearly identified in its advertising as a product of Roto Broil Corp. of America; that it was packed in a display carton with such equally clear identification; that the defendant had never used the phrase "hole in the handle" or induced or authorized any of its customers to use the same in connection with their advertising and marketing of defendant's knife, using, instead, the phrase "easy open grip" or "comfortable grip", or words or phrases of similar import.

The defendant introduced in evidence Exhibits marked "A" through "X", consisting in part, of prior art, including industrial and design patents issued prior to the application for plaintiff's patent in suit; also, depositions before trial of plaintiff's witnesses Wolf and Chapman, defendant's advertisement of its accused knife in Life Magazine, plaintiff's brochure, marked Exhibit M, electric knives then on the market, similar to that shown on the design patent in suit, which were marketed by Riviera, Shetland and Toastmaster, all having holes in the handle, and advertisements thereof by said companies, and actual specimens of plaintiff's mixette models No. 79 and No. 87, (Exhibits W and X respectively), photographs of which are contained in plaintiff's brochure, Exhibit M, and numbered 4 and 6 therein.

The patent at issue is a design patent for a power-operated carving knife, Des. 200,905 (Exhibit 27), a copy of which is hereto annexed and made a part hereof. The claim, as stated in the Letters Patent, is "the ornamental design for a power-operated knife", a specimen of which was introduced in evidence as Exhibit 7. The mechanical invention of a power-operated knife was first patented by General Electric Company, the motor of which was contained in a housing

which served also as a handle for grasping and operating the knife. It was marketed successfully. It is undisputed that the plaintiff manufactured a similar powered knife exclusively for Sears, Roebuck & Co., which also received wide consumer acceptance and support. The plaintiff then decided to manufacture and market a powered knife of its own and engaged the Chapman Company, which had previously designed electric mixers and mixettes for it, to design the same. The mixers and mixettes had been produced and sold by the plaintiff for several years prior to the date of its application for the patent in suit. The mixettes and mixers are similar in design to the knife described in the patent in suit; they have similar handles and their motors are contained in a housing separate from and below the handle. Both plaintiff's mixettes and electric knives are graphically shown in its brochure, Exhibit M, a copy of which is hereto annexed and made a part hereof. Inspection thereof will show that the mixettes, designated No. 4 and No. 6 on the said exhibit, have handles above the motor housing similar to that of the patented knife. An inspection of the specimens of said mixettes, Exhibits W and X, confirms such similarity. Furthermore, the Court has examined examples of relevant prior art, submitted by the defendant as its Exhibit B, and finds among them the similar idea of a handle, separated from the motor housing, in various other electrical appliances, among which are the following prior inventions:

| | | | |
|---|---|---|---|
| March 31, 1942 | Strauss | Des. 131,792 | – Electric Food Mixer |
| June 6, 1950 | Morgan | Des. 158,884 | – Food Mixer Power Unit |
| Feb. 12, 1952 | McFarland | Des. 165,924 | – Food Mixer Power Unit |
| Sept. 16, 1952 | Lambert | Des. 167,756 | – Power Unit for Food Mixer |

containing handles similar to that of the patent in suit, and having their power units below the handles.

In the light of all the foregoing, the plaintiff's claim of originality for its design patent has not been established. (Title 35 U.S.C. § 171). The idea embodied therein was not a significant advance or improvement over previous knowledge on the subject. To merit a patent and a consequent monopoly, the idea must be original as well as ornamental. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Trimble Products Incorporated v. W. T. Grant Company, 283 F.Supp. 707 (D.C.) aff'd. 404 F.2d 344 (2d Cir. 1968).

In affirming the judgment in the *Trimble* case, *supra,* the Appellate Court, per curiam, stated:

"The Supreme Court explained in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) the purpose of 35 U.S.C. § 103 was to codify the judicially established principle first announced in Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683 (1851) that an invention is not patentable if 'the improvement is the work of a skillful mechanic, not that of an inventor' ".

What the plaintiff claims is ornamentality in its design patent is really functionality, and represents the final shaping of the housing below the handle, made necessary in order to accommodate the motor and its parts. The design was not "new, original and ornamental", as it is required to be under Section 171, *supra.* While it had considerable commercial success, that fact "without invention will not make patentability". Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162. See also Rains v. Niaqua, Inc., 2d Cir., 406 F.2d 275, decided January 13, 1969.

The plaintiff's claim for unfair competition, count 2, alleging that the de-

fendant had without authority profited by the unauthorized use of plaintiff's phrase "the knife with the hole in the handle" in connection with the advertising and marketing of its knife, must also fail in the light of the stipulation entered into between the parties at the opening of the trial, wherein the plaintiff conceded that the defendant had at no time used the said quoted phrase in connection with its own advertising of the accused knife, and the further fact that the plaintiff failed to prove that the defendant had induced or authorized any of its customers to do so.

It is significant that with the entry into the market by Sunbeam, Riviera and Toastmaster with electric-powered knives, each with a hole in the handle, plaintiff's advertising slogan was changed to "the *original* knife with the hole in the handle". (emphasis supplied)

■ Based on all the evidence in the case, and the further fact that at the time of the alleged infringement the plaintiff's knife had had a very brief existence, the plaintiff's slogan can hardly be said to have acquired a secondary meaning. Even if it had, however, it would still be of no avail to the plaintiff since the defendant, in advertising, marketing and packaging its electric-powered knife, referred to it as having an "easy to grip handle" or an "open sword-grip handle", both clearly distinguishable from and not to be confused with plaintiff's slogan. Besides, each exhibit of its advertising identified its knife as the product of Roto Broil, or as "Le Chef", its trademark for same. The plaintiff has failed utterly to prove that the defendant, in advertising and marketing its knife, has at any time palmed it off

as the plaintiff's product, or induced or authorized its customers to do so. See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed. 2d 669 (1964).

Finding, as I do, that the plaintiff has failed to establish that the defendant has infringed its design patent, or engaged in unfair competition with it, counts 1 and 2 of the complaint are dismissed.

Since I am satisfied that plaintiff's design patent is not new, original and ornamental, and that the difference between its subject matter and the then prior art was such that it would have been obvious to a person having ordinary skill in the art to which it pertains, I conclude that the patent in suit is invalid, and, accordingly, defendant's counterclaim for a declaratory judgment of invalidity is granted.

■ The remaining counterclaims are dismissed. I believe that the alleged interference by the plaintiff with the defendant's trade, if there was such, was not willful or deliberate, and any damage resulting therefrom is speculative. Believing that the plaintiff prosecuted this action in good faith, costs and reasonable counsel fees are denied. Hanks v. Ross, 200 F.Supp. 605 (D.C.); Piel Mfg. Co. v. George A. Rolfes Co., 233 F.Supp. 891, 899 (D.C.) aff'd. 363 F.2d 57 (8th Cir. 1966) (35 U.S.C.A. § 285).

The foregoing constitutes the Court's findings of fact and conclusions of law herein. Counsel may, within ten days from the date hereof, submit proposed supplemental findings of fact and conclusions of law not inconsistent herewith.

APPENDIX

# United States Patent Office

Des. 200,905

Patented Apr. 20, 1965

200,905

**POWER OPERATED KNIFE**

Dave Chapman and Robert C. Le Sueur, Chicago, Ill.,
assignors to Scovill Manufacturing Company, Water-
bury, Conn., a corporation of Connecticut

Filed June 29, 1964, Ser. No. 80,611

Term of patent 14 years

(Cl. D22—3)

Fig. 1    Fig. 2

[Plaintiff's Exhibit 27]

Fig. 3

Fig. 5

Fig. 4

FIG. 1 is a bottom view of a power operated knife showing our new design;

FIG. 2 is a top plan view;

FIG. 3 is a side elevational view;

FIG. 4 is a rear elevational view; and

FIG. 5 is a front elevational view thereof.

We claim:

The ornamental design for a power operated knife, as shown.

References Cited by the Examiner

UNITED STATES PATENTS

| | | | |
|---|---|---|---|
| D. 113,829 | 3/39 | Agostimeto | D22—3 |
| D. 180,384 | 6/57 | Becker | D44—29 |
| D. 188,557 | 8/60 | Frost | D44—29 |

OTHER REFERENCES

Industrial Design, May 1963, page 44, G.E.'s electric carving knife shown in top left panel.

EDWIN H. HUNTER, *Primary Examiner.*

[Plaintiff's Exhibit 27]

# HAMILTON BEACH

a division of SCOVILL

## ELECTRIC KNIVES

[1] Model 273 Deluxe ELECTRIC KNIFE, with textured handle, safety switch and brushed aluminum insert. Velvet covered hang up storage tray. Perfectly balanced handle so even the smallest of feminine hands can grasp it firmly and comfortably for perfect cutting control. Polished non-corroding stainless steel blades with chrome plated grease guards are precisionally honed to a fine sharp edge Cutting blades slip apart for cleaning. Spring loaded on/off button with safety lock is on top of handle Blade release button on bottom of motor housing. Stain resistant hang-up storage tray with metallic accented handles, hold knife, blades and six-foot detachable cord. Guaranteed 5 years.
Model 273 Ind. packed, 3.7 lbs. Master carton of 6, 23.2 lbs. Model 270T, Ind. packed, 3 7 lbs. Carton of 6, 23.2 lbs

[2] Model 270T—Custom CARVING CENTER. Custom electric knife in white with charcoal trim, positive switch and blade release button Wood grained hang-up storage tray. Twin stainless steel blades. Six-foot detachable cord. Guaranteed 5 years.

115 volts, 100 watts, permanent magnet motor. AC only. UL listed. Wt , 1.4 lbs. Impact motor and stain resistant plastic motor housing.

[3] Model 275 Utility ELECTRIC KNIFE. Attractively styled motor housing with a "hole in the handle" for perfect carving control. Carves and slices quickly, effortlessly and uniformly—all you do is guide it Twin stainless steel blades slip apart for easy cleaning. Spring loaded on/off button on top. Blade release button on bottom Eight-foot attached cord.
115 volts, 100 watts, permanent magnet motor. AC only. UL listed. Ind. packed, 3.6 lbs. Carton of 6, 22.6 lbs.

## MIXETTE—Portable Mixers

[4] Model 79 Deluxe MIXETTE Portable Mixer. Contemporary styled mixer featuring a hand contoured handle, fingertip 3 speed control, beater ejector, large non-splash beaters and detachable cord. Stands on end, hangs on wall White, yellow, pink or turquoise; all with gleaming chrome metal top Guaranteed 5 years.

120 volts, AC-DC, 130 watts, UL listed. Ind. packed. Shp. wt., 4 lbs., master pack of 6, 24.4 lbs.

[5] Model 86 MIXETTE Portable Mixer. Weighs only 1¾ pounds. Fingertip switch 3-speed control, closed-handle design, large non-splash chrome plated beaters and positive beater ejector Stands on end, hangs on wall. White with charcoal trim. Guaranteed 5 years.
115 volts, 100 watts, AC-DC, UL listed. Ind. packed. Shp. wt., master pack of 6, 20 lbs

[6] Model 87 MIXETTE Portable Mixer. Weighs less than 2 pounds yet has all the features of the more deluxe models. Three-speed fingertip control, large beater ejector, stands on end, hangs on wall White with contrasting charcoal base Guaranteed 5 years
115 volts, AC-DC, 100 watts, UL listed. Ind. packed. Shp. wt., master pack of 6, 15 lbs.

Guarantee provides free repair and parts excepting only stainless steel blades, storage tray, cord set and damage due to misuse when returned to one of our authorized service stations listed on product guarantee certificate packed with each appliance.

[Defendant's Exhibit M]