**REMINGTON ARMS COMPANY, Inc.,**
**Plaintiff,**

v.

**HERTER'S, INC., Defendant.**

**No. 2–68 Civ. 88.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 16, 1970.

Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for plain-

tiff; Charles H. Walker, Helge C. Dieserud, Donald Degling, Fish & Neave, New York City, of counsel.

H. Dale Palmatier, Williamson, Palmatier & Bains, Minneapolis, Minn., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MILES W. LORD, District Judge.

This is an action for the infringement of United States Letters Patent No. 3,217,648 issued on November 16, 1965, to plaintiff Remington Arms, Co., Inc. The patent relates to a plastic device which is used on the inside of shotgun shells. These devices are known in the trade as "wad columns and shot liners", or simply as "wads". Plaintiff's wad is known commercially as the "Power Piston Wad". Defendant Herter's, Inc., sells combination wad columns and shot liners which are known commercially as "Vandalee" and "Grand Prix" wads. Plaintiff claims that the Vandalee and Grand Prix wads infringe plaintiff's patent. Defendant asserts that Patent No. 3,217,648 is invalid because any differences between plaintiff's patent and the prior art are such that they would have been obvious to a person of ordinary skill in the art. Alternatively, defendant argues that if plaintiff's patent is valid, the accused Vandalee and Grand Prix wads do not infringe. Finally, defendant argues that plaintiff is estopped from enforcing any claim of infringement because of patent misuse.

The wad "invented" by plaintiff is a combination wad and shot carrier for a shotshell. The patented wad is molded from a flexible plastic material and is generally cylindrical in shape and designed to fit into a shotshell. The wad is placed in the shotshell in such a position that the base of the wad covers the powder inside the shotshell. The base of the wad has a circumferential skirt which acts as a gas seal when the powder explodes upon firing. Adjacent to the base is a cushioning section consisting of collapsible plastic supports be-

tween the base and the shot load. Adjacent to the cushioning section is a shot carrier which surrounds the shot load on all sides except at the end of the shotshell case where the crimp in the shotshell is formed. The wall portion of the shot carrier contains a number of longitudinal slits extending from the open end of the shot carrier to points adjacent the cushioning section. Upon firing, the base acts as a gas seal, the cushioning section collapses, and the shot load and the entire wad travel together down the length of the gun barrel. Upon exiting the muzzle, the shotcup flares open because of the longitudinal slits and drops to the ground a short distance from the barrel. The shot load continues toward the target after the wad has fallen.

Before the trial of this case commenced both parties were asked to submit proposed findings of fact, conclusions of law, and orders for judgment. The parties did so and the Court was able to follow the testimony and compare it with the proposed findings as the evidence was adduced. After trial, both parties submitted refinements of their proposed findings of fact. Some of these changes were made in light of comments made during the trial. The Court has concluded that, with few exceptions, the final proposed findings of fact made by the defendant Herter's, Inc., have been established and the Court has therefore adopted those findings to a large extent. The essence of this Court's decision is that:

(1) The patent in question does not meet the test of nonobviousness as set forth in the United States Supreme Court's decisions in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 163 USPQ 673 (1969); Graham v. John Deere, 148 USPQ 459 (1966); Calmar, Inc. v. Cook Chemical Company, 148 USPQ 459 (1966); and United States v. Adams, 148 USPQ 479 (1966);

(2) If the patent in suit is valid, its patentability rests on such minutia that there is sufficient distinction between plaintiff's patent and the Vandalee and

Grand Prix wads so that the latter two do not infringe the patent;

(3) Defendant has not established that plaintiff has misused the patent.

## FINDINGS OF FACT

(1) Plaintiff, Remington Arms Co., Inc., is a Delaware corporation having its principal place of business at Bridgeport, Conn.

(2) Defendant, Herter's, Inc., is a Minnesota corporation having a regular and established place of business at Waseca, Minnesota, within the District of Minnesota, Second Division.

(3) United States Letters Patent 3,217,648 in suit was issued on November 16, 1965, to plaintiff, Remington Arms Co., Inc.

(4) At the present time and at all times since November 16, 1965, plaintiff is, and has been, the sole owner of patent 3,217,648 and all of the rights of recovery thereunder.

(5) Plaintiff has given actual notice of infringement of patent 3,217,648 to defendant by a letter from plaintiff's counsel, addressed to defendant, dated November 23, 1965.

(6) Since the issuance of the patent in suit and continuing to the present time, defendant has offered for sale and sold combination wad columns and shot liners known as "Vandalee" and "Grand Prix" wads within the District of Minnesota, Second Division.

(7) Federal jurisdiction is based upon the ground that this is an action for patent infringement brought under 35 U.S.C. § 281. This Court has jurisdiction under 28 U.S.C. § 1338(a), and venue is proper under 28 U.S.C. § 1400 (b).

(8) The subject of the patent was "invented" by Donald S. Foote, Edward A. Rickey, and Justin H. Whipple— employees of the plaintiff. (Hereinafter the patent will be referred to as the Foote patent.)

(9) The Foote patent includes 13 claims but only claim 1 is here charged to be infringed. Claim 1 reads:

1. A combination wad column and shot carrier for a shothell comprising a unitary, substantially cylindrical member made of a flexible plastic material which member includes: a collapsible cushion means integrally formed in one piece and of the same material as the rest of said plastic cylindrical member, said cushion means including an imperforate wall spaced upwardly from the lower end of said unitary cylindrical member, a circumferentially continuous skirt means integral with and projecting rearwardly from said imperforate wall, said wall and skirt means being positioned adjacent the charge of propellant powder so that the skirt means partially enclose a portion of said propellant charge and act as a gas seal therefor, a shot carrier integrally formed in one piece with and of the same material as said cushion means and extending in a direction opposite to the skirt means, said shot carrier comprising an open-ended, thin-walled tubular portion which encloses at least the major portion of the shot charge, and a plurality of circumferentially spaced longitudinal slits in said tubular wall portion extending from the open end of said tubular portion to points adjacent said cushion means.

## VALIDITY OF THE PATENT IN SUIT

(A) Applicable Law.

(10) The Foote patent in suit was regularly issued and is presumed valid under 35 U.S.C. § 282, which provides,

A patent shall be presumed valid. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

■ (11) The presumption of validity is weakened if the defendant proves that pertinent prior art was not considered by the Patent Office, Imperial Stone Cutters, Inc. v. Schwartz, 152 USPQ 91

(8th Cir. 1966); L & A Products, Inc. v. Britt Tech Corp., 150 USPQ 770 (8th Cir. 1966); Piel Manufacturing Co., Inc. v. George A. Rolfes Co., 150 USPQ 330 (8th Cir. 1966); American Infra-Red Radiant Co., Inc. v. Lambert Industries, Inc., 149 USPQ 722 (8th Cir. 1966).

(12) A patent is not valid if the invention would have been obvious to a person having ordinary skill in the art to which the subject matter of the patent pertains, 35 U.S.C. § 103.

(13) The United States Supreme Court set forth the factors to be considered on the issue of obviousness in Graham v. John Deere Co., 148 USPQ 459 (1966). The factors are as follows:

a.) The scope and content of the prior art.

b.) The differences between the prior art and the claims at issue.

c.) The level of ordinary skill in the pertinent art.

d.) The secondary considerations such as commercial success, longfelt but unsolved needs, failure of others, etc.

■ (14) It is not necessary to find all the aspects of an invention in a single prior art reference before the patent is invalid because of obviousness. A combining of prior art references which discloses all the aspects of the patent in suit will normally render the patent invalid, Calmar, Inc. v. Cook Chemical Company, 148 USPQ 459 (1966). In this respect, it is important to consider the synergistic results, if any, of a combination of old and well known elements, Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 163 USPQ 673 (1969); United States v. Adams, 148 USPQ 479 (1966).

■ (15) Even where longfelt need and commercial success are proven, a patent is not valid if it does not meet the other tests of non-obviousness, Calmar, Inc. v. Cook Chemical Company, supra; Great Atlantic & Pacific Tea Company v. Super Market Equipment Corporation, 87 USPQ 303 (1951).

B) The Prior Art.

(16) The parties have stipulated that the pertinent prior art includes the matters discussed in findings (17)–(27), which follow.

(17) During the 1950's Remington introduced a shotshell containing a modified form of wad known as the H-wad since it had a generally H-shaped cross section resulting from the provision of a skirt or flange extending in both directions from an imperforate transverse web. The H-wad, molded from flexible polyethylene plastic material, was symmetrical and eliminated the need for orientation of the wads in automatic feeding machinery. The first shells containing H-wads did not have a shot carrier and felt filler wads were placed between the H-wad and the shot load.

(18) Miller patent 3,055,301, issued to Olin Industries, Inc., in 1962, provided a wrap around plastic shot protector. The addition of the shot protector minimized abrasion of the shot pellets against the gun barrel, resulting in a reduction of the barrel leading and shot deformation and also in the improvement of the pattern performance and better reloadability of the paper shotshell.

(19) During the late 1950's Remington worked on a shotshell known as the zinc-plastic shotshell which included an injection molded plastic body assembled to a head formed from a zinc die casting alloy. The zinc-plastic shotshell is shown in Daubenspeck patent 3,099,958, issued to Remington in 1963. Daubenspeck provided a separate filler wad placed over the powder charge, and a combination plastic shot container and gas sealing skirt. The cylindrical shot container wall has slits extending from the transverse wall to the forward end to define wall segments which spread open upon ejection from the barrel. The flexible skirt portion of the shot container resembles the lower portion of the earlier H-wad and performs a gas sealing function. The patent asserts that the plastic shot container is adapted to be fired from the cartridge with the shot for the purpose of better controlling the shot pat-

tern, minimizing shot distortion, and preventing leading of the firearm barrel.

(20) Another wad is disclosed in French patent (Rhone-Alps) 1,186,659, issued February, 1959. In this wad, the shot charge is partially confined within a tubular wall. The shot charge rests upon a separate filler wad within the tubular portion of the wad. According to the patent, the base of the wad has a profile such that the combustion of the gases will be improved and the ballistic efficiency of the cartridge will be subsequently raised.

(21) Italian patent (Asborno) 511,012, issued in 1955, discloses another combination shot container and gas sealing wad in a one-piece construction formed from hard rubber or other suitable synthetic material. The shot container portion confines a portion or all of the shot. The patent asserts that under the influence of the gases acting inside the cup portion of the wad, the peripheral lip is widened laterally in such a way as to adhere tightly both initially on the powder case of the cartridge and subsequently when the wad leaves the cartridge, on the inner walls of the barrel, thereby making the best use of the action of the gases.

(22) Clark patent 2,986,998 issued June 6, 1961, illustrates a wad column with felt wads underlying the shot charge, and a plastic obturating wad forming a combination gas sealing flange and cushion integrally formed by molding in a one-piece construction, to overlie the powder charge. The wad has a transverse wall with a bore formed therein adjacent the flange and internal air chambers or recesses above the transverse wall and between the outside wall and radial ribs. During the firing, as disclosed by the patent, the pressure of the expanding gases from the powder charge forces the flexible flange at the base or rear of the wad against the walls of the shotshell, and then the barrel of the gun, to prevent gas leakage past the wad. The patent states that the wad is compressible so as to cushion the initial explosive impact for exercising a damping action on the transmission of the explosion to the shot.

(23) French patent (Bouchon) 1,136,976, issued January 7, 1957, illustrates another combination gas sealing and cushioning wad for a shotshell used in conjunction with a pair of card wads. The wad has a transverse wall and a cylindrical gas expansion chamber beneath the wall. A cylindrical wall continues above the transverse wall; and a concentric inner cylindrical wall also extends in both directions from the transverse wall. Above the wall and the adjacent card wad empty air spaces are defined within and between the concentric walls which, the patent says, flatten under the gas pressure. During firing, as described in the patent, the pressure of the expanding gases from the powder charge forces the expansion chamber formed by the base or rear of the wad and the adjacent card wad against the walls of the shotshell, and then the barrel of the gun to prevent gas leakage past the wad.

(24) A unitary metallic shot container is disclosed in Pedersen patent 1,066,525, issued in 1913. The bottom wall of the shot container is generally funnel shaped, i. e., with a tapered outer periphery and a dish shaped central portion. The central portion of said bottom wall rests upon a separate flat-surfaced single or multiple disk wad in the wad column and an annular air space exists between the flat-surfaced wad and the periphery of the bottom wall of the shot container. Upon firing the shotshell, the patent states that the bottom wall of the shot container is reformed as the central dish shaped portion is driven forwardly, with the result that the bottom wall is substantially flattened and the top wad is released. The patent asserts that as the shot container holds the shot charge together during its passage up the bore and for a short distance after they together have left the bore, the individual pellets of shot will have acquired a direction substantially parallel with the axis of the bore of the gun and not diverging to any great extent therefrom,

as happened heretofore when using a cylinder bore gun in which the shot came in direct contact with the barrel.

(25) Sweeley patent 1,470,655, issued in 1923, illustrates another shot container in the form of a hollow truncated cone made from paper, cardboard or metal. The peripheral wall of the shot container is tapered to a reduced diameter at the rear to provide an air space between the container wall, the shotshell case wall, and the filler wad behind the shot container. As described in the patent, upon firing the shotshell, the shot container resists movement of the shot radially outwardly toward the case wall and absorbs part of the force on the shot, and ultimately the container wall gives way to move toward the case wall or barrel to maintain many of the lead pellets out of contact with the barrel to minimize barrel leading and shot abrasion.

(26) French patent (Noizet) 928,104, issued in 1947, discloses another combination wad column and shot liner in a unitary one-piece and integral construction of cardboard, paper or compressed felt material to fit within a shotshell case. The shot liner or upper lip, as described, may extend to the area of the upper part of the shotshell case to enclose the major portion of the shot charge. The cylindrical shot liner may well have slits. The combination wad column has a gas sealing lip depending toward the powder charge. Between the shot liner and the gas sealing lip, the wad has a wasp waist defined by a smoothly contoured exterior peripheral groove; and also has a transverse wall at the waist to separate the powder charge there below from the shot charge within the shot liner. There remains an annular air chamber between the wasp waist of the wad column and the shotshell case. According to the patent, the wad particularly insured a perfect tightness with regard to the gases developed by combustion of the powder since the upper and lower lips adapt themselves tightly to the gun, whatever the profile of the latter, by increasing or reducing the diameter according to the circumstances.

(27) French patent (Pruno) 1,223,158, issued January 25, 1960, discloses another molded substantially cylindrical combination wad to fit within a cylindrical shotshell case. The upper cup, which contains a small portion of the shot, has a cylindrical extension of variable height in which is adjusted a disk of cork or fiber; the height of the disk is slightly less than that of the cylindrical portion of the wad. The lower cup of the wad is connected to the upper portion by a common base. An upper flaring wall, which may have several openings, diverges outwardly and upwardly from the transverse wall; there being an air space within said flaring wall and a second air space outside the flaring wall and adjacent the shotshell case. The cork or fiber wad or disk is supported by the flaring wall so as to carry the shot charge. The lower truncated cone-shaped cup has its shape changed at the instant of the explosion of the powder charge. The purpose of the openings, according to the patent, is to compensate the increase in pressure which the compression of the air in this cup may produce when the explosive charge of the cartridge explodes and the disk of the wad is crushed by the force of inertia of the lead shot; the wad thus slides downward inside the cylindrical portion, whereby the folding of the wall of the upper cup of the wad is counteracted, the effect of which would be to deteriorate this wall and hence to cause the residues to adhere to the walls of the gun, which, in turn, would produce the leading of the gun.

The patent states that owing to the above defined arrangements, in firing, the shot charge is more concentrated; also the range is greater and more effective, because since the pressure of the gases is lower as a result of the elasticity of the wad, the expulsion force produced by the gases is softer and less abrupt than in the cartridges charged with the usual wads.

(28) Thus, the prior art relevant to this case includes the H-wads described in finding (14), and the patents which are listed below:

### Considered by Patent Office

| | | |
|---|---|---|
| Daubenspeck | 3,099,958 | August, 1963 |
| Clark | 2,986,998 | June, 1961 |
| French patent (Rhone-Alps) | 1,186,659 | February, 1959 |
| Italian patent (Asborno) | 511,012 | January, 1955 |

### Not Considered by Patent Office

| | | |
|---|---|---|
| Miller | 3,055,301 | September, 1962 |
| Sweeley | 1,470,655 | October, 1923 |
| Pedersen | 1,066,525 | July, 1913 |
| French patent (Pruno) | 1,223,158 | January, 1960 |
| French patent (Bouchon) | 1,136,976 | January, 1957 |
| French patent (Noizet) | 928,104 | May, 1947 |

---

It should be noted that the Patent Office considered certain patents which are not listed above in reaching its determination. The Court believes, however, that the other patents considered by the Patent Office are not important to this case. It should also be noted that Clark patent 2,986,998, listed above, was considered by the primary examiner, but that due to an administrative mistake, the Clark patent was not considered by the Board of Appeals in the Patent Office.

C) Differences Between the Prior Art and the Claim at Issue.

(29) The only synergistic results of the Foote patent are easier loading of the shotshell and a lower cost of producing shotgun shells.

(30) Daubenspeck patent 3,099,958, Asborno Italian patent 511,012, and Rhone-Alps French patent 1,186,659, are examples in the prior art of a combination shot carrier and gas sealing base.

(31) The Clark patent 2,986,998, and the Bouchon French patent 1,136,976, are examples in the prior art of a combination gas sealing base and cushioning section.

(32) The Sweeley patent 1,470,655, and the Pedersen patent 1,066,525, are examples in the prior art of a combination shot carrier and cushion.

(33) The Pruno French patent 1,223,-158, is an example in the prior art of a combination gas seal, cushioning section, and modified shot cup. The Noizet French patent, 928,104, also appears to be an example in the prior art of a combination of all three elements except that the patent does not specifically state that the wad performs a cushioning function.

(34) It should be noted that the bottom wall of the shot carrier is not defined in claim 1 of the Foote patent. The primary examiner in the Patent Office refused to accept claim 1 of the Foote patent. Upon appeal, plaintiff indicated that the wall between the shot load and the cushioning section was not included in claim 1, stating,

Since there are several devices on the market which have come out since

plaintiff's device was developed which use a thin cardboard or other wad between the cushioning means and the shot charge, it was clear to applicants from the beginning that claim 1 should be broad enough to include these 'infringing devices'. (Defendant's exhibit 2, p. 102)

Thus, the fact that the Pruno patent contains a disk wad between the bottom of the shot cup and the shot load does not distinguish the Pruno patent from the Foote patent.

(35) The only significant difference between the Pruno patent and the Foote patent is the length of the shot carrier and the fact that the Foote patent is made of a plastic material. The Daubenspeck patent shows a full length plastic slitted shot carrier. Thus, the Pruno and Daubenspeck patents combined fully anticipate claim 1 of the Foote patent.

D) Skill in the Art.

(36) The only evidence in the record concerning the level of skill in the art consists of the qualifications of the experts who testified at trial or were deposed, and their actual testimony. This evidence is sufficient, however, to persuade the Court that the field of ballistics and, more specifically, the field of designing shotshell components, is quite sophisticated. The plaintiff maintains a research department, including a laboratory division, where staff personnel continuously work on ballistics developments. The expert witnesses who testified at trial all showed a high degree of learning in all phases of ballistics. The Court concludes that the field of designing components for shotgun shells is a highly skilled art.

E) Secondary Considerations.

(37) Under the circumstances of this case, it is unnecessary to consider the sub-tests of non-obviousness such as longfelt need, commercial success, etc., because it is clear from the prior art that the Foote patent would have been obvious to a person having ordinary skill in the art.

F) Conclusion.

■ (38) Claim 1 of the Foote patent is invalid under 35 U.S.C. § 103 because the alleged invention was obvious to a person of ordinary skill in the art in view of the prior art.

Plaintiff has not charged defendant with infringement of the remaining claims 2 through 13 of the Foote patent and therefore a decision as to the validity of claims 2 through 13 is unnecessary. Consideration of claim 1 is dispositive of the issues in this case.

### INFRINGEMENT

An invalid patent, of course, cannot be infringed. Since plaintiff may wish to appeal this Court's decision, however, it is necessary for the Court to rule on the question of whether plaintiff's patent—if valid—is infringed by the Vandalee and Grand Prix wads.

(39) The minimal distinctions between the Foote patent and the prior art require that claim 1 of the Foote patent be given a narrow interpretation.

(40) In its application for a patent in the Patent Office, plaintiff stated that it was presenting detailed and specific claims. (Defendant's exhibit 2, pp. 46, 91.)

(41) Claim 1 of the Foote patent describes only one specific form of cushioning section, that is, a "collapsible cushion means".

(42) The Vandalee and Grand Prix wads are one piece plastic wads combining a gas seal, cushioning means, and shot carrier. The gas seal and shot carrier in the Vandalee and Grand Prix wads are connected by a rod or post with a circular disk intermediate between the ends of the post to guide along the shotshell case and gun barrel. The Vandalee and Grand Prix wads effect cushioning

primarily by the coning of the bottom wall of the shot carrier upon firing. There is no buckling or bending of the center post during firing.

(43) The distinction between the cushioning means in the Foote patent and the cushioning means in the Vandalee and Grand Prix wads is significant enough so that the Vandalee and Grand Prix wads do not infringe the Foote patent.

## PATENT MISUSE

■ (44) The substance of defendant's claim of patent misuse is as follows: Remington Arms Company, Inc. and Olin Industries, Inc. dominate two-thirds of the market for shotgun shells. These two companies have entered into a series of agreements which consist of the swapping of royalty-free licenses in order to drive smaller competitors out of the field.

(45) Plaintiff asserts that the cross-licensing agreements between Remington Arms and Olin Industries are the result of a settlement of a lawsuit between the two companies.

(46) On the basis of the record before this Court, the Court is unable to determine whether the agreements between Remington and Olin were entered into in good faith or not. Consequently, the defendant has not established that plaintiff is guilty of patent misuse.

## CONCLUSIONS OF LAW

### (AS AMENDED)

1) Claim 1 of the Foote patent 3,217,-648 is invalid under 35 U.S.C. § 103.

2) Neither the defendant's Vandalee nor Grand Prix wad infringes claim 1 of the Foote patent 3,217,648.

3) Defendant has not established that plaintiff has misused the patent.

4) Defendant shall have his costs of action.

Let judgment be entered accordingly.